**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Celia A. Alvarez, | ) | No. CV-10-310-PHX-SMM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| Maricopa County, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court are: (1) Defendants Joseph Arpaio and Ava Arpaio's (the "Arpaio Defendants") Motion for Partial Summary Judgment (Doc. 92) and (2) Defendant Maricopa County's Motion for Summary Judgment (Doc. 95). Both matters are now fully briefed. (Docs. 99, 100, 103, 104.)[1] Having considered the parties' memoranda and other submissions, the Court issues this Order.

## BACKGROUND

### I.    The Arpaio Defendants' Motion for Partial Summary Judgment

On February 11, 2009, the Maricopa County Sheriff's Office (the "MCSO") executed a search warrant at Handyman Maintenance, Inc. ("HMI"), a Phoenix landscaping business. (Doc. 92-1 ¶¶ 5, 12, 15; Doc. 101 ¶ 1.) The MCSO search sought to apprehend suspects employed by HMI, including Plaintiff Celia Alvarez ("Plaintiff"), on suspicion of illegally

---

[1] The Arpaio Defendants requested oral argument in connection with their Motion for Partial Summary Judgment (Doc. 92 at 1). The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motions suitable for decision without oral argument. See L.R. Civ. 7.2(f).

1   using social security numbers not assigned to them by the Social Security Administration.

2   (Doc. 92-1 ¶¶ 7-8; Doc. 101 ¶ 1.) During the search numerous suspects attempted to evade

3   law enforcement by fleeing and hiding. (Doc. 92-1 ¶ 17; Doc. 101 ¶ 1.)

4       MCSO Deputy David Ayers ("Deputy Ayers") located Plaintiff inside a trailer parked

5   on the HMI property, where she was hiding in a storage compartment under a bed. (Doc. 92-

6   1 ¶¶ 22-23; Doc. 101 ¶ 3.) Plaintiff sought Deputy Ayers' help in extricating herself from the

7   compartment. (Doc. 92-1 ¶ 29; Doc. 101 ¶ 5.) Plaintiff alleges that Deputy Ayers grabbed

8   her hand, pulled her from the compartment, and threw her against the trailer wall, injuring

9   her face, head, and jaw. (Doc. 101 ¶¶ 6-7.) However, Plaintiff testified during her deposition

10  that she was uncertain if Deputy Ayers intended to harm her and stated that she lost her

11  balance and struck her face on the trailer wall after Deputy Ayers released his grip on her

12  hand. (Doc. 92-1 ¶¶ 39-41; Doc. 101 ¶¶ 9-11.) The Arpaio Defendants contend that Deputy

13  Ayers helped Plaintiff from the compartment without incident. (Doc. 92-1 ¶¶ 30-33.) The

14  Arpaio Defendants assert that Plaintiff then walked outside and was not seen again by

15  Deputy Ayers. (Doc. 92-1 ¶ 33.)

16      After Plaintiff and Deputy Ayers parted ways, Plaintiff stood in line to be screened

17  to determine if she was identified in the search warrant. (Doc. 92-1 ¶ 47; Doc. 101 ¶ 15.)

18  Plaintiff was speaking while waiting in line, and an unidentified MCSO employee twice

19  warned her in Spanish not to do so. (Doc. 92-1 ¶ 47; Doc. 101 ¶ 15.)  Plaintiff alleges that

20  as she stood in line, the unidentified MCSO employee struck her on the arm with a clipboard,

21  causing her pain and bruising. (Doc. 92-1 ¶ 47; Doc. 101 ¶ 15.) Plaintiff testified at her

22  deposition that the unidentified MCSO employee immediately apologized to Plaintiff for

23  striking her and stated that he "shouldn't have done that." (Doc. 92-1 ¶ 47; Doc. 101 ¶ 15.)

24  A health appraisal completed by Maricopa County Correctional Health Services two weeks

25  after the alleged clipboard incident noted a "fading bruise" on Plaintiff's left upper arm.

26  (Doc. 102-2 at 2.) Plaintiff provides no other evidence that the clipboard incident occurred.

27  The Arpaio Defendants question whether the clipboard incident happened, and further

28

1  contend that if it did occur, it was the inadvertent result of the unidentified MCSO employee

2  directing Plaintiff not to communicate while in line. (Doc. 104 at 6-7.) An MCSO

3  administrative investigation concluded that the marks on Plaintiff's left arm could have been

4  "natural skin discoloration." (Doc. 102-4 at 2.)

5      Upon being identified as one of the targets of the search warrant, Plaintiff then

6  proceeded to booking and intake. (Doc. 34 ¶ 19.) During the booking and intake process,

7  Plaintiff alleges that she was subjected to strip and body cavity searches without probable

8  cause, with male co-workers and MCSO employees present. (Doc. 34 ¶ 19; Doc. 92-1 ¶ 50;

9  Doc. 101 ¶¶ 17-18.) Plaintiff testified at her deposition that during the first search she was

10  ordered to strip to her underwear before an MCSO employee searched her genitals in the

11  presence of male co-workers. (Doc. 102 at 16-17.) Plaintiff testified that during the second

12  search she was ordered to completely disrobe, at which point a female MCSO employee

13  again searched her genitals. (Doc. 101 ¶ 18, Doc. 102 at 16-17.) Plaintiff offers no other

14  evidence that the searches occurred. The Arpaio Defendants deny that the searches occurred

15  and offer the deposition of MCSO Central Intake Center shift commander Lt. James Gundy,

16  who testified that only over-the-clothing pat-downs are conducted during the booking and

17  intake process unless probable cause warrants a strip search. (Doc. 92-1 ¶¶ 51-54.) Lt. Gundy

18  further testified that male MCSO employees are not present during strip searches and that

19  body cavity searches are never conducted on female detainees. (Doc. 92-1 ¶¶ 53-54.) Plaintiff

20  does not dispute that Lt. Gundy provided an accurate portrayal of MCSO policy, but asserted

21  that Lt. Gundy had no first-had knowledge of Plaintiff's arrest and booking, and thus cannot

22  offer evidence on whether Plaintiff received a strip or body cavity search. (Doc. 101 ¶ 18.)

23      During all of her interactions with MCSO employees, Plaintiff alleges that she was

24  denied equal protection based upon her race. (Doc. 34 ¶¶ 24-27.) However, Plaintiff

25  acknowledged in her deposition that she did not know if Deputy Ayers' alleged mistreatment

26  of her was motivated by racial animus. (Doc. 92-1 ¶ 56, Doc. 101 ¶ 20.) Plaintiff did testify

27

28                                          - 3 -

1  at her deposition that an unidentified MCSO employee called her a "wetback" during

2  booking. (Doc. 101 ¶¶ 20-21.)

3     Plaintiff's First Amended Complaint accuses the Arpaio Defendants of: (1) negligence

4  (Count One); (2) gross negligence (Count Two); (3) violation of 42 U.S.C. § 1983 for failing

5  to train personnel in lawful policies and procedures related to use of force, due process of

6  criminal suspects, search and seizure, and racial discrimination (Count Three); and (4)

7  violation of § 1983 for deliberate indifference to the use of excessive force, due process, and

8  unequal protection (Count Four). (Doc. 34.) The Arpaio Defendants filed a Motion for Partial

9  Summary Judgment on Plaintiff's Count Three and Count Four. (Doc. 92.) Plaintiff responds

10  that genuine issues of material fact exist that make summary judgment on Count Three and

11  Count Four inappropriate. (Doc. 100).

12  **II.   Maricopa County's Motion for Summary Judgment**

13     Plaintiff alleged in her First Amended Complaint that during her time in custody, jail

14  staff denied her care, which exacerbated her injuries. (Doc. 34 ¶ 22.) Plaintiff alleged that

15  Maricopa County: (1) negligently failed to provide Plaintiff with proper medical care or

16  attention; (2) was grossly negligent in Plaintiff's care and treatment; (3) violated 42 U.S.C.

17  § 1983 for failure to train its employees and agents in providing medical care; and (4)

18  violated § 1983 for deliberate indifference to Plaintiff's medical needs. (Doc. 34.) In

19  Plaintiff's Response to Maricopa County's Motion for Summary Judgment, Plaintiff

20  conceded that all of her claims related to medical negligence and deliberate indifference to

21  medical needs should be dismissed. (Doc. 99 at 1.) However, Plaintiff contends that

22  Maricopa County should remain in this lawsuit because it is liable for the Arpaio Defendants'

23  allegedly improper conduct. (Doc. 99 at 2.)

24  **LEGAL STANDARD**

25     A court must grant summary judgment if the pleadings and supporting documents,

26  viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine

27  dispute as to any material fact and the movant is entitled to judgment as a matter of law"

28  - 4 -

1   Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
2   Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines
3   which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see
4   also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the
5   suit under the governing law will properly preclude the entry of summary judgment."
6   Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be
7   "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see
8   Jesinger, 24 F.3d at 1130.

9       A principal purpose of summary judgment is "to isolate and dispose of factually
10  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against
11  a party who "fails to make a showing sufficient to establish the existence of an element
12  essential to that party's case as to which that party will bear the burden of proof at trial." Id.
13  at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The
14  moving party need not disprove matters on which the opponent has the burden of proof at
15  trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not
16  produce evidence "in a form that would be admissible at trial in order to avoid summary
17  judgment." Id. at 324. However, the nonmovant must set out specific facts showing a genuine
18  dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,
19  585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

20                              **DISCUSSION**

21  **I.   The Arpaio Defendants' Motion for Partial Summary Judgment**

22      Under 42 U.S.C. § 1983, any person who "under color of any statute, ordinance,
23  regulation, custom, or usage . . . depriv[es] [a citizen] of any rights, privileges, or immunities
24  secured by the Constitution and laws" is subject to civil liability. The Court will review
25  Plaintiff's allegations that the Arpaio Defendants violated the Fourth and Fourteenth
26  Amendment in light of the allegations contained in Plaintiff's First Amended Complaint.
27  (Doc. 34.) Plaintiff's First Amended Complaint alleges: (1) excessive force by Deputy Ayers
28

1  in the HMI storage trailer and an unidentified MCSO employee who allegedly struck Plaintiff

2  with a clipboard during screening; (2) an unlawful strip and body cavity search, and (3) racial

3  discrimination. (Doc. 34.)

4  **1.     Excessive Force**

5       Law enforcement officers may only use force that is objectively reasonable under the

6  circumstances. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)  ("[T]he 'reasonableness'

7  inquiry in an excessive force case is an objective one: the question is whether the officers'

8  actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

9  without regard to their underlying intent or motivation."); <u>see also</u> <u>Cornwell v. Electra Cen.</u>

10 <u>Credit Union</u>, 439 F.3d 1018, 1028-29 n.6 (9th Cir. 2006) (plaintiff cannot prevail on

11 summary judgment "by relying solely on the plaintiff's subjective belief that the challenged

12 [] action was unnecessary or unwarranted.") The Court must balance "the nature and quality

13 of the intrusion on the individual's Fourth Amendment interests against the countervailing

14 governmental interests at stake." <u>Graham</u>, 490 U.S. at 396. Evaluating the "nature and

15 quality" of a given "intrusion" requires an evaluation of the "type and amount of force

16 inflicted." <u>Chew v. Gates</u>, 27 F.3d 1432, 1440 (9th Cir. 1994). The governmental interest is

17 measured by considering: (1) the severity of the crime at issue; (2) whether the suspect posed

18 an immediate threat to the safety of the officers or others; (3) whether the suspect was

19 actively resisting arrest, and any other exigent circumstances. <u>Graham</u>, 490 U.S. at 394;

20 <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1280 (9th Cir. 2001).

21       **A.     The Trailer Incident**

22       Plaintiff sought Deputy Ayers' assistance in extricating herself from the storage

23 compartment she hid in during the MCSO search. (Doc. 92-1 ¶ 29, Doc. 101 ¶ 5.) Plaintiff

24 claims that Deputy Ayers pulled her from the compartment and slammed her face into a wall.

25 (Doc. 101 ¶¶ 6-7.) However, this allegation is contradicted by Plaintiff's deposition

26 testimony, in which she expressed uncertainty about whether Deputy Ayers meant her harm

27 and acknowledged that she struck the wall not because Deputy Ayers threw her against it,

28

but rather because she lost her balance after Deputy Ayers released his grip. (Doc. 34 ¶ 15; Doc. 92-1 ¶¶ 15, 39-41; Doc. 101 ¶¶ 6-7, 9-11.) That Plaintiff had apparently surrendered, was not suspected of a violent crime, and posed no threat to Deputy Ayers' safety is irrelevant given the lack of evidence that Deputy Ayers used unreasonable force. See Graham, 490 U.S. at 394-97. Rather, the evidence demonstrates that at most Deputy Ayers was ineffective in helping Plaintiff to exit the compartment. (Doc. 92-1 ¶¶ 39-41; Doc. 101 ¶¶ 9-11.) Plaintiff cannot avoid summary judgment simply by expressing a subjective belief that Deputy Ayers behaved abusively. See Cornwell, 439 F.3d at 1028-29. Plaintiff has not created a question of fact regarding a constitutional violation, and therefore the Court will grant summary judgment for the Arpaio Defendants on allegations stemming from the trailer incident.

**B.    The Clipboard Incident**

After an unidentified MCSO employee twice warned Plaintiff in Spanish not to speak while standing in line for processing, Plaintiff alleges that the employee struck her on the arm with a clipboard, and then immediately apologized. (Doc. 34 ¶ 17; Doc. 92-1 ¶¶ 47-48, Doc. 101 ¶ 15.) Even assuming that the unidentified MCSO employee struck Plaintiff with the clipboard, and that the discoloration on her arm was bruising caused by the clipboard, the Court cannot conclude that the action constituted excessive force. See Graham, 490 U.S. at 396-97. Such conduct might appear rude and unnecessary, but it does not rise to the level of a Fourth Amendment violation. Id. at 396. ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973))). Because Plaintiff has not created a question of fact regarding a constitutional violation, the Court will grant summary judgment for the Arpaio Defendants on allegations related to the clipboard incident.

Had Plaintiff created a question of fact regarding the clipboard incident, the Arpaio Defendants would still not be liable. Plaintiff has sued the Arpaio Defendants in their individual capacity for their alleged failure to train and institution of unconstitutional policies

1    and practices. Under § 1983, the Arpaio Defendants could be liable for the action of

2    subordinates "if there exists either (1) personal involvement in the constitutional deprivation,

3    or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

4    constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). Causal

5    connection can be established if the Arpaio Defendants "set[] in motion a series of acts by

6    others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or

7    reasonably [should] have know[n], would cause others to inflict the constitutional injury."

8    Larez v. City of L.A., 946 F.3d 630, 646 (9th Cir. 1991); Watkins v. City of Oakland, 145

9    F.3d 1087, 1093 (9th Cir. 1998) ("A supervisor can be liable in his individual capacity 'for

10   his own culpable action or inaction in the training, supervision, or control of his subordinates;

11   for his acquiescence in the constitutional deprivation . . . ; or for conduct that showed a

12   reckless or callous indifference to the rights of others.'" (quoting Larez, 145 F.3d at 646)).

13        Here, Plaintiff has offered no evidence regarding the Arpaio Defendants' personal

14   involvement in the alleged clipboard incident or established a causal connection between the

15   Arpaio Defendants and that alleged incident. See Hansen, 885 F.2d at 646. First, it is

16   undisputed that the Arpaio Defendants did not actively participate in the alleged clipboard

17   incident. See id. Second, despite conducting discovery, the only evidence beyond Plaintiff's

18   allegations that the clipboard incident occurred is a notation regarding a fading bruise

19   recorded two weeks after the alleged incident. Plaintiff failed to present a deposition or

20   declaration of any of the individuals who would have seen the clipboard incident. Third,

21   Plaintiff has failed to demonstrate that any policies and practices instituted by the Arpaio

22   Defendants caused the alleged clipboard incident to occur. See id. Fourth, Plaintiff presents

23   no evidence that the Arpaio Defendants were involved in any impropriety during any

24   investigation that followed the alleged clipboard incident. See id. Thus, Plaintiff has failed

25   to raise a genuine issue of material fact as to whether the Arpaio Defendants personally

26   participated in, or had any knowledge, of the claimed deprivations, or that they otherwise

27

28

1    directed or set in motion the unidentified MCSO employee's alleged actions related to the

2    clipboard incident. See Larez, 946 F.3d at 646; Watkins, 145 F.3d at 1093.

3    **2.    Unlawful Search**

4        The Fourth Amendment guarantees "[t]he right of the people to be secure in their

5    persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. In

6    assessing whether a search is constitutional, the Court must balance the governmental interest

7    that justifies the intrusion and the level of intrusion into the privacy of the individual. Bell

8    v. Wolfish, 441 U.S. 520, 559; Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486,

9    1496 (9th Cir. 1996). Courts are to consider: (1) "the scope of the particular intrusion," (2)

10   "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the

11   place in which it is conducted." Bell, 441 U.S. at 559. The U.S. Supreme Court and the Ninth

12   Circuit have deemed strip and body cavity searches constitutional under certain

13   circumstances. See id. at 558-60 (validating visual searches of body cavities in prison

14   setting); Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (body cavity searches did

15   not clearly violate established rights for purposes of equal protection). By contrast, the Court

16   recently held that the probing search of a male inmate by a female was unconstitutional. Byrd

17   v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1147 (9th Cir. 2011).

18       If the two alleged searches occurred in the manner that Plaintiff claims, they would

19   appear to be unreasonable. (Doc. 34 ¶ 19, Doc. 92-1 ¶ 50, Doc. 101 ¶ 18); see Bell, 441 U.S.

20   at 559; see Byrd, 629 F.3d 1135. The manner and scope of the alleged searches–which

21   allegedly consisted of one hands-on check of Plaintiff's genitals as she stood in her

22   underwear with males present and another hands-on check while Plaintiff was completely

23   naked–would support a finding of unreasonableness. (Doc. 102 at 16-17); see Bell, 441 U.S.

24   at 559. The justification for conducting the alleged searches, Plaintiff's booking and intake

25   into custody, would further support a finding of unreasonableness. (Doc. 102 at 16-17.) And

26   the place of the alleged searches, one of which occurred in a common area with males

27   present, would also support a finding of unreasonableness. (Doc. 102 at 16-17.)

28

1    However, an allegation of an unreasonable search does not bestow liability on the

2    Arpaio Defendants. Plaintiff has offered no evidence regarding the Arpaio Defendants'

3    personal involvement in the alleged unreasonable search. See Hansen, 885 F.2d at 646. First,

4    it is undisputed that the Arpaio Defendants did not actively participate in the alleged

5    searches. See id. Second, Plaintiff has not contradicted Lt. Gundy's assertions that it is

6    MCSO policy not to conduct strip searches on suspects like Plaintiff and to never conduct

7    hands-on body cavity searches. (Doc. 92-1 ¶¶ 53-54, Doc. 101 ¶ 18.) Third, despite

8    conducting discovery, there is no evidence that a strip and body cavity search occurred

9    beyond Plaintiff's allegations. Plaintiff failed to present a deposition or declaration of any

10   of the numerous individuals who allegedly saw the alleged strip and body cavity search.

11   Fourth, Plaintiff has failed to demonstrate that any policies and practices introduced by the

12   Arpaio Defendants caused the allegedly unconstitutional search. See id. Fifth, Plaintiff

13   presents no evidence that the Arpaio Defendants were involved in any impropriety during

14   any investigation that followed the allegedly unconstitutional search. See id. Plaintiff fails

15   to raise a genuine issue of material fact as to whether the Arpaio Defendants personally

16   participated in, or had any knowledge, of the claimed deprivations, or that they otherwise

17   directed or set in motion the unidentified MCSO employee's alleged actions related to the

18   search. Larez, 946 F.3d at 646; Watkins, 145 F.3d at 1093. Thus, the Court finds that

19   Plaintiff cannot proceed against the Arpaio Defendants in their individual capacity.

20   Therefore, the Court will grant summary judgment for the Arpaio Defendants on Plaintiff's

21   claims related to the alleged unconstitutional strip and body cavity search.

22   **3.    Racial Discrimination**

23   A Fourteenth Amendment equal protection claim for racial discrimination requires

24   that the law enforcement policy, pattern, or practice "had a discriminatory effect" and "was

25   motivated by a discriminatory purpose." Wayte v. United States, 470 U.S. 598, 608 (1985);

26   Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995) ("a long line of Supreme Court cases

27   make clear that the Equal Protection Clause requires proof of discriminatory intent or

28

1   motive."). To survive summary judgment, a plaintiff "'must produce evidence sufficient to

2   permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision

3   . . . was racially motivated.'" Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741,

4   754 (9th Cir. 2001) (quoting FDIC v. Henderson, 940 F.2d 465, 473 (9th Cir. 1991)).

5          Plaintiff alleges a violation of her Fourteenth Amendment equal protection rights for

6   racial discrimination. (Doc. 34.) The Court finds that Plaintiff has presented no evidence that

7   any relevant MCSO policy, pattern, or practice "had a discriminatory effect" and "was

8   motivated by a discriminatory purpose." Wayte, 470 U.S. at 608. First, there is no evidence

9   that the incident with Deputy Ayers was motivated by any discriminatory animus, and

10  Plaintiff herself acknowledged that she did not know this to be the case. (Doc. 92-1 ¶ 56;

11  Doc. 101 ¶ 20.) Second, Plaintiff does not present evidence that the clipboard incident was

12  motivated by discrimination. Third, Plaintiff's strip and body cavity search allegations lack

13  evidence of discrimination. Fourth, although Plaintiff's allegation that an unidentified MCSO

14  deputy called her a "wetback" as she was processed for booking is offensive if true, such

15  verbal abuse alone does not violate the Constitution. Oltarzewski v. Ruggiero, 830 F.2d 136,

16  139 (9th Cir. 1987) ("'[v]erbal harassment or abuse . . . is not sufficient to state a

17  constitutional deprivation under 42 U.S.C. § 1983'") (quoting Collings v. Cundy, 603 F.2d

18  825, 827 (10th Cir. 1979)). As Plaintiff has not created a question of fact regarding a

19  constitutional violation, the Court will grant summary judgment for the Arpaio Defendants

20  on Plaintiff's racial discrimination allegations.

21  **II.    Maricopa County's Motion for Summary Judgment**

22         In her Response to Defendant Maricopa County's Motion for Summary Judgment,

23  Plaintiff stated her consent to dismissal of all claims related to medical negligence and

24  deliberate indifference. (Doc. 99 at 1.) Accordingly, the Court will grant summary judgment

25  on Plaintiff's allegations that Maricopa County was: (1) negligent in failing to provide

26  Plaintiff with proper medical care or attention; (2) grossly negligent in Plaintiff's care and

27  treatment; (3) in violation of 42 U.S.C. § 1983 for failure to train its employees and agents

28

1  in providing medical care; and (4) in violation of § 1983 for deliberate indifference to

2  Plaintiff's medical needs.

3          Plaintiff contends that Maricopa County is liable for the Arpaio Defendants' conduct.

4  (Doc. 99 at 2.) The Court has found that the Arpaio Defendants' are not liable for any § 1983

5  violation alleged by Plaintiff. Consequently, the Court finds that Maricopa County cannot

6  be liable for the Arpaio Defendants' conduct. Plaintiff also asserts in her First Amended

7  Complaint that Maricopa County should be found vicariously liable for Plaintiff's § 1983

8  claims based upon MCSO employees' alleged conduct. (Doc. 34 ¶ 9). Maricopa County can

9  only be found liable under § 1983 when the "execution of a government's policy or custom

10  . . .   inflicts the injury." Monell v. Dept. of Soc. Serv., 436 U.S. 658, 694 (1978). A

11  municipality's liability under Monell may be premised on any one of three distinct theories:

12  (1) a municipal employee was acting pursuant to an expressly adopted official policy; (2) a

13  municipal employee was acting pursuant to a longstanding custom or practice; or (3) a

14  municipal employee was acting as a final policymaker. See Webb v. Sloan, 330 F.3d 1158,

15  1164 (9th Cir. 2003). The act of a final policymaker includes the ratification of an alleged

16  unconstitutional action by a subordinate. See Lytle v. Carl, 382 F.3d 978, 987 (9th Cir.

17  2004). Here, Plaintiff has failed to produce evidence that would establish municipal liability

18  under the foregoing criteria. The only conduct Plaintiff alleges that could potentially give rise

19  to liability is Plaintiff's uncorroborated assertion that she was subjected to an unreasonable

20  search. However, Plaintiff presents no evidence from which the Court could conclude that

21  a policy, custom, or practice existed that authorized or ratified the alleged conduct.

22  Therefore, the Court will grant summary judgment as to all claims against Maricopa County.[2]

23

24

25          [2] Plaintiff stated in her First Amended Complaint that she would name the MCSO
    employees listed as unidentified Defendants upon learning their identity through discovery.

26  (Doc. 34 ¶ 12.) However, Plaintiff has conducted discovery and has still not identified the
    unidentified Defendants. Therefore the Court will dismiss the unidentified Defendants listed

27  in Plaintiff's First Amended Complaint (Doc. 34).

28

1    **III.    Plaintiff's State Law Claims**

2        Plaintiff's Count One and Count Two allege negligence and gross negligence, both

3    of which are matters of state common law. (Doc. 34 at 7-10.) Under 28 U.S.C. § 1367(a),

4    subject to exceptions which are not relevant here, the district courts have supplemental

5    jurisdiction over state law claims in any civil action in which the district courts also have

6    original federal jurisdiction over all other claims in the case. But "once judicial power exists

7    under § 1367(a), retention of supplemental jurisdiction over state law claims under § 1367(c)

8    is discretionary." <u>Acri v. Varian Assoc. , Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

9    "The district courts may decline to exercise supplemental jurisdiction over a claim under

10   subsection (a) if . . . the district court has dismissed all claims over which it has original

11   jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, the Supreme Court has cautioned that "if

12   the federal claims are dismissed before trial, . . . the state claims should be dismissed as

13   well." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).

14       Here, the Court has granted summary judgment on Count Three and Count Four of

15   Plaintiff's First Amended Complaint, which alleged violations of the U.S. Constitution. All

16   that remains of Plaintiff's First Amended Complaint are Count One and Count Two, which

17   allege state law violations. The Court will not exercise its discretion to consider Plaintiff's

18   state law claims because none of Plaintiff's federal claims have survived summary judgment.

19   <u>See</u> <u>Gibbs</u>, 383 U.S. at 726; 28 U.S.C. § 1367(c)(3). Therefore, Plaintiff's Count One and

20   Count Two are dismissed.

21                                   **CONCLUSION**

22       Plaintiff has failed to demonstrate that the Arpaio Defendants were present during any

23   event involving Plaintiff or that the Arpaio Defendants knew of, participated in, authorized,

24   directed, or otherwise adopted any unconstitutional conduct. Nor has Plaintiff produced

25   evidence that could implicate Maricopa County under <u>Monell</u>. <u>See</u> 436 U.S. 658.

26   Accordingly,

27

28

1    **IT IS HEREBY ORDERED GRANTING** the Arpaio Defendants' Motion for

2  Partial Summary Judgment (Doc. 92).

3    **IT IS FURTHER ORDERED GRANTING** Defendant Maricopa County's Motion

4  for Summary Judgment (Doc. 95).

5    **IT IS FURTHER ORDERED DISMISSING** Count Three and Count Four of

6  Plaintiff's First Amended Complaint (Doc. 34).

7    **IT IS FURTHER ORDERED DISMISSING** Count One and Count Two of

8  Plaintiff's First Amended Complaint (Doc. 34) as the Court will exercise its discretion not

9  to consider these state law claims.

10    DATED this 25th day of August, 2011.

11

12

13                        Stephen M. McNamee
                          United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 14 -